208-1083, Robert Pinter v. SCI. Counsel, please. May it please the Court, Counsel, good morning, Your Honors. My name is John Elisak. I represent the petitioner appellant in this case. This case involves an accident that occurred while the petitioner, Robert Pinter, sustained an injury to his back while performing a delivery for the respondents, Chicago Delivery and United Express. This case was tried before Arbitrator Kinnaman, who issued a decision finding that there was an employer-employee relationship between Pinter and United Express Chicago Delivery and that there was a loaning employer relationship between Pinter and SCI. The arbitrator also found, the evidence showed that petitioner's yearly wages for the 52 weeks prior to the accident were $188. The respondent filed a review of the finding of employer-employee relationship and the petitioner filed a review of the finding of the average weekly wage, or the yearly wage being $188. At the commission level, the commission reversed on the finding of an employer-employee relationship between Pinter and United Express Chicago Delivery and made no further findings. That was a unanimous decision, wasn't it? I believe it was, yes. Counsel, it's a claimant's obligation, is it not, to establish the existence of an employer-employee relationship? Yes. And in this case, I believe the evidence overwhelmingly shows that there was, in fact, an employer-employee relationship. The pertinent facts are that Pinter was a delivery driver for United Express from 1999 through 2002 as an employee. United Express took out Social Security taxes, took out federal taxes, all the taxes, and basically gave Mr. Pinter a paycheck. Then sometime in 2002, SCI comes into the picture. As far as I can tell, SCI is basically a contractor out of New York that comes in and helps companies set up these independent contractor relationships. They came in in 2002, and Mr. Pinter was presented with an independent contractor agreement, which he signed. The only thing that changed between when he was an employee and when he was now under this agreement with SCI is that taxes were no longer taken out of his checks and that he was required to purchase his own insurance and that he received a 4 percent increase in his share of the commission on delivery. I think we're aware of the history and the facts, and I think I would certainly acknowledge, at least, that the fact that there's an agreement that the employer designates this is an independent contractor relationship, the designation in and of itself doesn't control. Sure. We form over substance. But the case law indicates there's a number of factors to consider in assessing the nature of the relationship as to whether or not the employee is, in fact, an independent contractor or just an employee in spite of what the paper says. So why don't you hone in and highlight those factors that you believe established this person was an employee. I certainly will. And not an independent contractor. I certainly will. And actually, the reason that I was going into a discussion of this is that he was an employee right up until the time he signed this piece of paper. Nothing much changed from before to after, which I do believe is a big factor that was not addressed by the commission. That's one of the factors. But as far as his day-to-day job, which, again, did not change from the time he was an employee until the time he signed this independent contractor agreement. Basically, Mr. Painter was a delivery driver, and he worked for a delivery company picking up United Express and Chicago Delivery. They were in the business of you give them a call, you need a package delivered, they send out somebody to pick it up and take it where it needs to go. Mr. Painter was simply a delivery driver with a truck. And there's an intimate relationship between the type of business that United Express, Chicago Delivery was in, and the type of work that Mr. Painter did, which is one of the factors and an important factor that was not addressed by the commission. Yes, it was. Yes, it was. I mean, they acknowledged the seven work factors in their opinion. They laid them out. They laid out all eight of them, actually, the eight work factors. They turned around and said none of the factors listed in the work case apply to this petitioner. Respondent dispatched the petitioner to make deliveries, but did not request a certain route to take. Petitioner could reject any assignment made by the respondent. He had the freedom to drive for other companies. Both parties could terminate their agreement at any time. No taxes were withheld from the payments made by the petitioner. Most importantly, none of the instrumentalities to perform the job were provided by the respondent. And where the petitioner had to list the trailer, at least the trailer from the respondent. There was no such requirement in this case. I believe that the commission did not address the issue of the relationship between the type of business that United Express was in and the type of work that Mr. Painter did. It's only one of eight factors. That is one of eight factors, but the courts have said in many decisions, including early AMWARE, that that is an important factor to consider, because who is an independent contractor? An independent contractor typically, a company will hire an independent contractor to do something that they don't do. And that's more in the nature of an independent contractor, and it's an important factor. Let me ask you something I think is a critical factor, or one of the important factors. Was he paid on an hourly basis, or was he paid by the job? He was paid by the job. Okay, so he's paid by the job. He's not on the clock, and he has the right to refuse the job, correct? According to the independent contractor agreement, he did have the right to refuse the job. I'd like to talk a little bit more about that. All right, but he's not paid by the hour, correct? Correct. He's paid by the job. So if he's called up and he refuses the job, does that sound like he's employed by this company? I would say that if he did, in fact, refuse jobs, it would not be like being an employee. But he did not refuse jobs. Well, it's not whether he did or not. The issue is whether or not he had the right to refuse the job and how he was paid. Those are important considerations, aren't they, Matt? The right to refuse a job is an important consideration. However, and the case law addresses this, it's not just whether you have the right to do something or not do something in a written agreement. It's how it plays out in reality. Because a lot of these agreements have these type of clauses, but the way that they're played out is you really, the employee does not really have a right to refuse because if they do, they'll be terminated. And in this case, if you look at what actually happened, he had the right to refuse taking deliveries and he had the right to work for other companies. He never worked for any other company and he never refused a delivery. And he testified that if he did refuse a delivery, his contract would be terminated, which is exactly like an employee, not like an employee contractor. In his mind, what evidence was there other than his subjective assumption? That was the only evidence that was adduced at the hearing. There was no evidence presented to contradict what Mr. Painter had to say about his experience in working under this agreement. Who provided the vehicle that he used? He did provide the vehicle. Was his title and his name, I take it? Yes. The company really had no control over the vehicle, did they? Well, to a certain extent they did. But what I would say is that they were going to be installing a GPS system, which was scheduled to be installed in his vehicle right before he was injured and he was required to have their equipment installed in his vehicle. In the other cases, the seminal cases on this issue, the early case and the Ware case, is the exact same thing where the employee owned the vehicle and the employer didn't have anything to say about paying for gas or paying for upkeep or anything like that. So the GPS system, in your opinion, means they control the job. Couldn't it be also the inference drawn that the company, obviously a reputation is an important part of the business, they want the deliveries made in a timely manner. They would like to make sure that the person they hire for deliveries doesn't get lost. We'd agree a GPS system helps a person get to a location probably more expeditiously than wandering around an unfamiliar location. I certainly agree with that and I agree that this is not the only factor, but I also agree that the company being able to install his equipment on his vehicle and also put together with the evidence that he only worked for this company tends more towards an employee-employer relationship as opposed to an independent contractor relationship. But if it's an inference to be drawn from the facts and, you know, if they could draw the inference that there is an employer-employer relationship or they could draw the inference that there is not based upon the evidence, then why isn't it their call under a mattress weight standard? Why isn't it the call of the commission? Yeah. Well, my response to that is that they didn't, at the commission level, they did not take a close look at the evidence. And if you look at all of the evidence. Well, they made a mistake is at least one of the where factors applies in this case and that is the nature of the work in relation to the general business of the respondent. Yes. And they were wrong on that. They said none of the factors applied and clearly that one does. But the fact of the matter is, you know, if two of the factors benefit him, six of the factors don't, is there only one right answer? Well, in this particular case, and I would say that that wasn't the only thing that they, first I'd like to say that wasn't the only thing that the commission misapplied. One of the where factors they said weighed in favor of an independent contractor relationship, the right to terminate the contract at will. That actually weighs in favor of an employee-employer relationship, not an independent contractor relationship. And so that was also a misapplication. And the case law is very clear on that. Well, let's give them both. Let's give them two of eight. Even that, the factors that they cite in finding that those weigh in favor of an independent contractor, if you look at the case law, those factors are the least important factors. And so what happened at the commission level is that they gave great weight to the least important factors and didn't look at the most important factors, which is the right to control, a long, continuous relationship, an exclusive relationship, the fact that Mr. Painter had to wear a uniform with the company's logo on it, the fact that he was an employee right up until the time he signed this piece of paper. Generally, these cases say that the two real heavy factors are who provides the instrumentalities and who has the right to control means and method. And in this particular case, this employee, this respondent had no right to control means and method. Go deliver this to a certain place. We're not telling you how to get there. We're not telling you what speed to travel. And we're not going to give you the instrumentalities to do it with. I would, in response. Those are pretty heavy where factors. I agree. In response, I would say that who owns the instrumentality is, has become. Who provides the instrumentality. Who provides the instrumentality, correct, is becoming less of an important factor as control is becoming a more important factor. I would also say that as far as control over the day-to-day activities of Mr. Painter in this case, is quite a bit more than just that. As far as his work day was concerned, he was required to be available at a certain point in the day, and then he received dispatches by way of a pager that was provided by the company all day long, and he was on call until he was told by them that he could end his day. Counsel, you said something interesting. I don't want to interrupt you, but you made a specific mention of the fact that the agreement provided that he could refuse jobs, he could work for other delivery services, but you argue that he testified that if he did that, he would be terminated. Did you not say that? As far as the taking deliveries, he said if he took deliveries for other, or if he refused deliveries that he would be terminated. What about if he worked for somebody else? I don't know if he testified to that, but what I do know that he did testify to is he worked exclusively for this company for a number of years, even under that contract. He did not take deliveries for anybody else. But isn't the evidence established that he left to respond and to work for another delivery service for a seven-month period in 2004 or 2005? Yes, that's correct. He did that. And then he came back to work for the company that he said was going to fire him if he left. Isn't that significant? That is significant. However, I believe that the evidence is a little bit different than that. What the evidence, or what he testified to, is while he was working for this particular company, Chicago Express, United Delivery, he was on call 24-7. He had to be available whenever they wanted to send him a dispatch, so he could not work for anywhere else. He left working for this company to go and work for another company for seven months, and he worked for that company exclusively for that seven months, and then came back to this company. So obviously he didn't get fired, he didn't get terminated. They welcomed him back. He didn't get terminated because he was not working for them anymore. He wasn't doing any deliveries for them anymore. If he had been an independent contractor, able and available to do deliveries for this company, for Chicago Delivery, United Express, and he was taking deliveries for other companies at the same time, then he would have not been available on call as they required, and as he testified, he was required to be available. Thank you. Counsel, please. Good morning. May it please the Court, Counsel. I'm here on behalf of SEI and Chicago Delivery. I want to... Who are you? Brent Hovland. Sorry. Thank you. I want to stress that there are eight factors as pointed out by the justices, and those are laid out in where, and I think it's clear in where, it's clear in Roberson, it's clear in Early that those factors are to be weighed by the Industrial Commission, Workers' Compensation Commission, excuse me, and they are to determine what weight each of those factors are given and how they balance each other. And I agree with the justice down here that the commission was incorrect, that there is one factor at least that supports the position that the petitioner was an employee. It is the nature of the work factor. I don't disagree with that statement, that that probably does support it. But I think what the commission did do is they looked at all the factors and they correctly determined that the most important factor, which is the right of control, they went through a number of things on the right to control, and they found that that points to an independent contractor relationship. There was testimony by the petitioner that, in fact, there were some changes after the relationship changed between himself and the respondent. In fact, he told us that he was allowed to take more vacation, he took more vacation, that he scheduled that vacation, nobody scheduled it for him like you would expect for an employee. He did leave and go drive for another company and come back. And I want to make a point that that's a good point to notice because one of the things I think we've got to look at when we're thinking about whether someone's an employee or an independent contractor is how easily is it to move between jobs in that industry. And if you're able to take your van and your experience as a courier and go drive for somebody else because you don't like the way things are going, then that clearly shows more of an independent contractor situation than a situation where an employee is more tied to the respondent because they aren't able to move easily to another company. The method of payment, clearly, this was he was paid by the job. I think an important factor here is the income taxes. He was able to take his own out. Did the method of payment change? How was he paid when he was an employee? That isn't clear from the record whether he was paid by the job or whether he was paid. He was probably paid by the job when he was a courier. So there was no change? There was no change. There was no change. Probably. I'm not sure the record is clear. I'm telling you that from my experience of trying some of these cases, but I'm not sure if the record is clear on that. The income tax withhold is an important factor. Clearly, when he was an employee before the relationship changed, he paid some taxes on whatever he made. He didn't pay taxes when he was an independent contractor. He testified that he didn't pay taxes because his income for that year, according to what he told the IRS, and I'm not saying anything that this was incorrect, but that he only had $188 in income, so he didn't pay taxes. Can I ask you this? Yeah. On page 2 of the arbitrator's decision, she says on the back of the license paragraph, paragraph 3 includes representation of the lesser, gives the equipment over to the exclusive use, direction, and control of the lessee. Is that correct? Is that what was on the back of it?  And where we look at that is while he's driving for them, they have to be, by federal law, have to be liable for the vehicle during that time period, while he's driving for them. However, that's only while he's doing a delivery for them, and he also testified that he used the van for his own purposes at times, and it's clear from the contract that he could have driven for another company under their. . . Are you talking about displaying the ICC number? Yes. Federal requirement to display the ICC number of the lessee? Yes. During the time period that he's driving for them. . . I understand. When he's using it for his own purposes, he wouldn't have to do that. He certainly wouldn't be under their control, and he did testify to that. They're saying the ICC number language is connected with this language. Yes. Yes, it is. And I think the most important factor here for the commission, and I think that is correctly pointed out earlier, is who provided the instrumentality. His van is what is used to deliver these packages. His van can be used to deliver the packages for somebody else, and he in fact took his van to deliver packages for somebody else for a seven-month period. That's very different than the Ware case, where in that case, yes, it was his cab, but it was very important to the court in that case that it wasn't his trailer, and that that trailer in that particular case was actually quite expensive because he was delivering some flammable or some other type of goods, and the trailer was actually a very expensive instrumentality, and it was the company's trailer that he was delivering. So it's very different here. Again, it's a manifest way to the evidence question. I agree that the commission was probably incorrect in saying that none of the factors apply here, but I think when you look at the balance, take that out, look at the balance. The commission's decision is not against the manifest way to the evidence that most of the factors and the majority of the factors and the weight of the factors are that he was an independent contractor. Thank you. Thank you, Counsel. Rebuttal. Just to respond to some of the questions that you brought up, as far as the method of payment changing from the time that he was an employee to the time that he was an independent contractor, or at least signed the independent contractor agreement, the method of payment did not change. What did change is that they didn't take taxes out and that he got an increase in 4% per delivery. There is evidence in the record of the change in payment. And I think that that weighs in favor of him being the same type of employee he was before he signed that agreement. Not taking the taxes out weighs in favor of an employee-employee relationship? No, that the method of him being paid, how he earned his money, it being per delivery when he was an employee and it being per delivery after he signed the agreement. But not taking the taxes out would be suggested more of an independent contractor relationship. That's correct. But it's one of the less important factors according to the case law. As far as the exclusive use provision that was in the independent contractor agreement, despite whether it's required by federal law, and the courts have addressed that, it doesn't matter if it is or if it isn't, that that exclusive use provision does in fact weigh in favor of an employee-employer relationship, and that's addressed directly in the where decision and I believe also in the early decision. As counsel pointed out that Mr. Painter could leave at any time and go and work somewhere else, that is actually, that's one of those factors that weighs in favor of an employee-employer relationship because it's closer to an at-will relationship. And again, the courts have discussed this. If it's a true independent contractor, you have to have a reason to break a contract, not that the contract can be broken by either party at any time without any reason and any consequences. That's closer to an at-will employee situation. With an independent contractor, if you broke the contract, you'd have to pay the rest of the contract. That's not the case here. And that also has been addressed by the courts but wasn't addressed by the commission. I wanted to just quickly address the right to control versus actual control issue that came up, and that's the provisions in the independent contractor agreement that allowed Mr. Painter to refuse deliveries and drive for other employees. Sorry, drive for other employers. This has come up before and the courts have addressed it and they've looked at how it plays out, not whether it's contained in the agreement but how it plays out in actuality, how that right is actually exercised. Does the employee actually get to do those things without consequence that the agreement says that they get to do? And in this case, the only evidence is that Mr. Painter did not get to do those things while he was working for the respondent and he did not get to refuse deliveries. He did not get to drive for other companies. And I want to quickly address the other issue that came up on appeal which was the average with the wage issue. Is it fair for you to do that on rebuttal when he doesn't get the chance to answer it? You never argue it in your main argument. It's kind of like checking and raising the card game, isn't it? If there's prejudice, then I'll rely on my argument. You pick the arguments, the issues that are going to be argued. Is it fair to raise it in rebuttal when it was never discussed before? I suppose not. Again, I'll rely on my argument. I mean, you got briefs to deem. Okay. And I think that's it. Thank you. Thank you, counsel. The Court will take the matter under advisory for disposition.